IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:19CR201 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| CLARENCE TUCKER, | ) | GOVERNMENT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

Now comes the United States of America, by and through its attorneys, Justin E. Herdman, United States Attorney, and Robert J. Kolansky, Assistant United States Attorney, and hereby files this sentencing memorandum. The Government disagrees with the offense level calculations contained within the Presentence Investigation Report filed December 4, 2019. (Doc. 35: PSR, PageID 111-135). The Government believes that the appropriate offense level, prior to Acceptance of Responsibility, is 24. As a result, the Government recommends a sentence within the advisory guideline range of 46 to 57 months.

I.    **OFFENSE CONDUCT AND GUIDELINE CALCULATION**

  A.    Offense Conduct

On or about December 27, 2018, in the Northern District of Ohio, Eastern Division, Defendant CLARENCE TUCKER did knowingly and intentionally possess with intent to distribute approximately 1.18 grams of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance; cocaine, a Schedule II controlled substance; and fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

On or about December 27, 2018, in the Northern District of Ohio, Eastern Division, Defendant CLARENCE TUCKER did knowingly and intentionally possess with intent to

distribute approximately 0.99 grams of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

On or about December 27, 2018, in the Northern District of Ohio, Eastern Division, Defendant CLARENCE TUCKER did knowingly and intentionally possess with intent to distribute approximately 11.89 grams of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

On or about January 28, 2019, in the Northern District of Ohio, Eastern Division, Defendant CLARENCE TUCKER did knowingly and intentionally possess with intent to distribute approximately 28.19 grams of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

On or about January 28, 2019, in the Northern District of Ohio, Eastern Division, Defendant CLARENCE TUCKER did knowingly and intentionally possess with intent to distribute approximately 10.0 grams of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

On or about January 28, 2019, in the Northern District of Ohio, Eastern Division, Defendant CLARENCE TUCKER did knowingly and intentionally possess with intent to distribute approximately 1.31 grams of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

On or about January 28, 2019, in the Northern District of Ohio, Eastern Division, Defendant CLARENCE TUCKER did knowingly and intentionally possess with intent to distribute approximately 7.53 grams of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

On or about January 28, 2019, in the Northern District of Ohio, Eastern Division, Defendant CLARENCE TUCKER, having been previously convicted of crimes punishable by imprisonment for a term exceeding one year, those being: Possession of Drugs, a felony of the 4th degree, on or about July 29, 2003, Case Number CR-03-436796-ZA; Trafficking in Drugs, a felony of the 4th degree, on or about March 28, 2005, Case Number CR-05-461066-A; and Involuntary Manslaughter, a felony in the 1st degree, on or about October 5, 2005, Case Number CR-05-464209-A, all in the in the Cuyahoga County Court of Common Pleas, did knowingly possess in and affecting interstate commerce, a firearm, to wit: a Glock 27, .40 caliber handgun, serial number VDC367, and ammunition, said firearm and ammunition having been shipped and transported in interstate commerce, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

More specifically, on or about December 27, 2018, members of the Cleveland Police Department's 5th District Vice Unit conducted a traffic stop on the defendant, Clarence TUCKER. The traffic stop took place on Euclid Avenue at Burgess Road, in Cleveland, Ohio. TUCKER was driving a Chevrolet Equinox which made several turns without the use of a turn signal, and which had dark tinted windows. During the traffic stop, police detected the odor of marijuana and observed a bag of crack cocaine on the center console. TUCKER and his vehicle were searched, and police recovered cocaine, heroin, fentanyl, marijuana, a digital scale, two cell

phones, and $1,703.00 of United States currency. TUCKER was Mirandized, and admitted that what was seized was about 10 grams of cocaine and under five grams of heroin. TUCKER was arrested and charged in the Cuyahoga County Court of Common Pleas. On December 29, 2018, TUCKER was granted bond and released from custody.

The evidence seized during the traffic stop was sent for testing, with the following results: (1) one bag containing 1.18 grams of heroin, cocaine, and fentanyl; (2) one bag containing 0.99 grams of heroin and fentanyl; (3) a digital scale containing residue of heroin, cocaine, and fentanyl; and (4) two plastic bags containing a total of 11.89 grams of cocaine.

In the weeks after his initial arrest, detectives with the 5th District Vice Unit continued investigation of TUCKER. They observed inconsistencies in the address that TUCKER had reported to them and to the Probation Department, and the one he used to renew his driver's license. The address that TUCKER gave to the police on the date of his arrest and that he provided to probation upon his release from custody was 1675 Catalpa Road, Cleveland, Ohio. Detectives checked this location multiple times in January of 2019 and observed the Chevrolet Equinox that TUCKER had been arrested while driving in the driveway behind the residence. Additionally, on three other dates in January, 2019, detectives located the Equinox in the driveway of an adjacent residence.

On January 21, 2019, 5th District Vice Detective Yasenchak observed a Nissan Altima in the parking lot of Euclid Beach apartments at 125 East 156th Street at Lakeshore Boulevard in Cleveland, Ohio. The Altima is also registered to and owned by TUCKER. Detective Yasenchak noted in the affidavit in support of a search warrant for the Catalpa Road residence

4

that "[t]his parking lot is known to Affiant as a hot spot for drug sales."[1] Detective Yasenchak conducted a traffic stop on the Altima, based on motor vehicle violations, after it left that parking lot, and positively identified TUCKER as the driver. TUCKER was released without being issued a citation, and was followed back to the Catalpa Road residence.

On January 22, 2019, detectives collected the garbage from the tree lawn of 1675 Catalpa Road, Cleveland, Ohio. Within the garbage, detectives located mail addressed to TUCKER, an empty box of Sleepinal, two empty blister packs of Sleepinal, several open, empty Sleepinal capsules, a paper towel with cocaine crumbs, several plastic bags with residue, and a rubber glove with whitish residue. These items were sent to the lab for testing. The crumbs in the paper towel were confirmed as cocaine, the plastic bag residue was confirmed as cocaine, and an additional bag tested positive for marijuana residue.

On January 23, 2019, 5th District Vice detectives obtained a search warrant for 1675 Catalpa Road from the Cuyahoga County Court of Common Pleas. On January 28, 2019, Cleveland Police SWAT and detectives executed the search warrant at the Catalpa Road residence. Just prior to the execution of the warrant, detectives observed a Chevrolet truck arrive at 1675 Catalpa Road. The driver entered 1675 Catalpa Road for approximately one minute, then exited and drove off in the truck.

At approximately the same time, TUCKER exited 1675 Catalpa Road, and drove off in the Chevrolet Equinox that he was driving at the time of the December 27, 2018 traffic stop. Two detectives followed TUCKER in the Equinox and conducted a traffic stop on Euclid

---

[1] Detective Yasenchak's Affidavit was disclosed to TUCKER and his attorney in discovery and to the Probation Department for the preparation of the Presentence Report. The Government will introduce a redacted copy of this Affidavit at the sentencing hearing if requested by the Court.

Avenue in Cleveland, Ohio. TUCKER was found to be in possession of 7.53 grams of cocaine base ("crack") and 1.13 grams of a mixture and substance containing a detectable amount of heroin and fentanyl, along with a digital scale with residue of heroin, fentanyl, and cocaine on it. Additionally, TUCKER was in possession of two cell phones, a thumb drive, and $20.00 of United States currency.

SWAT made entry into 1675 Catalpa Road after making multiple announcements, and found no one inside the residence. Detectives conducted a thorough search and located extensive evidence indicating that TUCKER both stored and manufactured controlled substances within the residence. Most of these items were discovered in the kitchen. Included within these items, in summary, were 27.82 grams of cocaine, 10.0 grams of a mixture of heroin and fentanyl, two digital scales with cocaine residue, multiple glass Pyrex containers and measuring cups with cocaine residue, silverware with cocaine residue, Sleepinal packets, and sandwich bags. Additionally, detectives located a lease for the residence in the living room, listing TUCKER and Gary Richins as the residents, $3,040.00 of United States currency, and a Glock 27, .40 caliber handgun, serial number VDC367, and ammunition within the residence. The full list of items seized during the search is included within Detective Yasenchak's Cleveland Police Department Report, dated January 31, 2019.[2]

---

[2] Detective Yasenchak's Cleveland Police Department Report, dated January 31, 2019, was disclosed to TUCKER and his attorney in discovery and to the Probation Department for the preparation of the Presentence Report. The Government will introduce a redacted copy of this report at the sentencing hearing if requested by the Court.

TUCKER was brought to the residence and subsequently waived his rights under *Miranda*. He admitted that the firearm was his, that all of the drugs in the house were in the kitchen, and that he possessed the firearm for his protection.

B.  Guideline Calculation

An indictment was returned on April 2, 2019, charging TUCKER with seven counts of Possession with Intent to Distribute Controlled Substances in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and one count of Felon in Possession of a Firearm and/or Ammunition, in violation of 18 U.S.C. § 922(g)(1). (R. 1: Indictment, PageID 1-4). On August 22, 2019, TUCKER pled guilty to the indictment with a plea agreement pursuant to Rules 11(c)(1)(A) and (B). (R. 29: Plea Agreement, PageID 72-84). The following are the Guideline calculations as agreed upon between the Government and TUCKER in the Plea Agreement:

| **Counts 1-8 (Grouped per § 3D1.2(c); Applicable Guideline: 2D1.1)** | | |
|---|---|---|
| Base offense level (60-80 KG Converted Drug Weight) | 20 | § 2D1.1(c)(10) |
| Possession of Firearm | +2 | § 2D1.1(b)(1) |
| Maintaining Premises for Manufacture | +2 | § 2D1.1(b)(12) |
| **Total Offense Level before Acceptance of Responsibility** | **24** | |

(R. 29: Plea Agreement, PageID 77).

Further, the Plea Agreement included the following language, which correctly and accurately details the agreement of the parties as to the appropriate Guidelines calculations:

> For purposes of determining Defendant's statutory penalty and imprisonment range under the United States Sentencing Guidelines, Defendant and the USAO agree and stipulate that Counts 1-8 group per U.S.S.G. § 3D1.2, and the applicable guideline is § 2D1.1. Additionally, the parties agree and stipulate that the amount of drugs defendant possessed with intent to distribute in Counts 1-7 was 13.48 grams of Fentanyl, 40.08 grams of Cocaine, and 7.53 grams of Cocaine Base ("Crack"). The parties further agree that this equates to 68.60 kilograms of converted drug weight, which corresponds to a base offense level of 20 pursuant to U.S.S.G. § 2D1.1(c)(10). The parties additionally agree that a two-level enhancement applies, pursuant to U.S.S.G. § 2D1.1(b)(1), because the defendant possessed a firearm. The parties agree and stipulate that a two-level enhancement applies, per U.S.S.G § 2D1.1(b)(12) because the defendant maintained a premises

>for the purpose of manufacturing controlled substances. As a result, the parties agree and stipulate that the total offense level, before acceptance of responsibility, is 24. Unless otherwise agreed to below, the parties agree that no other specific offense characteristics, Guideline adjustments or Guideline departures apply.

(R. 29: Plea Agreement, PageID 77).

The Probation Officer disagrees with the agreement of the parties regarding the application of the two-level enhancement for maintaining a premises for the purpose of manufacturing controlled substances pursuant to U.S.S.G. § 2D1.1(b)(12). (Doc. 35: PSR, PageID 118, 134). As detailed below, the Government submits that the relevant facts of the instant offenses demonstrate the proper application of this enhancement. Further, the defendant expressly agreed and stipulated to the application of the enhancement in his Plea Agreement. (R. 29: Plea Agreement, PageID 77). As a result, the government requests that this Court apply the two-level enhancement per U.S.S.G. § 2D1.1(b)(12).

The PSR correctly details the extent of TUCKER's criminal history, of which only 3 points score for a conviction for Involuntary Manslaughter. At the time of the instant offenses, TUCKER was under a criminal justice sentence – parole for the Involuntary Manslaughter conviction – therefore 2 points are added. As a result, the total criminal history score is 5, placing him in criminal history category III. (Doc. 35: PSR, PageID 119-123).

TUCKER receives a 3-level reduction for acceptance of responsibility, bringing the final offense level to 21. With a level 21 and a criminal history category of III, TUCKER's guideline imprisonment range is 46 to 57 months.

## II.  SENTENCING FACTORS 18 U.S.C. § 3553(A)

Upon properly calculating the advisory guideline range, this Court is required to follow 18 U.S.C. § 3553(a), which states:

>This Court is required to consider the following factors in determining the sentence.

>    (a)  Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
>
>> (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
>>
>> (2)  the need for the sentence imposed--
>>
>>> (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>>
>>> (B)  to afford adequate deterrence to criminal conduct;
>>>
>>> (C)  to protect the public from further crimes of the defendant; and
>>>
>>> (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>>
>> (3)  the kinds of sentences available;
>>
>> (4)  the kinds of sentence and the sentencing range established for--
>>
>> (5)  any pertinent policy statement--
>>
>> (6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>>
>> (7)  the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The nature and circumstances of TUCKER's offenses, and his history and characteristics indicate that this Court has much to consider.  TUCKER is thirty-four years old and has multiple felony convictions, including drug possession, drug trafficking, and involuntary manslaughter. (Doc. 35: PSR, PageID 119-125).

TUCKER's criminal conduct dates back to age 16, when he was adjudicated delinquent for multiple motor vehicle and tobacco violations. Additionally, at age 16, TUCKER was placed in a Drug Court Program as a result of an arrest for felony drug trafficking offenses. He subsequently failed to participate in that Drug Court Program. (Doc. 35: PSR, PageID 119). Between the ages of 17 and 18, TUCKER was adjudicated delinquent for multiple additional motor vehicle violations, Unauthorized Use of a Vehicle (1st degree misdemeanor), and for misdemeanor drug possession. (Doc. 35: PSR, PageID 120-121).

However, TUCKER's criminal conduct only escalated as he entered adulthood, having been convicted of felony drug possession at age 18 and felony drug trafficking at age 19. (Doc. 35: PSR, PageID 121-122).

In 2005, at age 20, TUCKER was convicted of Involuntary Manslaughter, a felony of the first degree, with a firearms specification. He was sentenced to 12 years' imprisonment; 9 years for the Involuntary Manslaughter charge, and 3 years' consecutive imprisonment for the firearm specification. He was released from custody on August 15, 2016, and was still under parole supervision for these offenses at the time of his instant arrest. (Doc. 35: PSR, PageID 122-123).

As a result of TUCKER's consistent criminal activity, and his failure to benefit from previously imposed sanctions, the Government's position is that his criminal history score is not overrepresented, and a sentence within the guideline range reflects the seriousness of his offense, promotes respect for the law and provides just punishment for his criminal conduct.

Furthermore, the Presentence Investigation Report has not identified any factors as possible founds for a departure or variance from the sentencing guidelines provisions.

### III. GOVERNMENT'S OBJECTION

    A.    U.S.S.G. § 2D1.1(B)(12)

Under the United States Sentencing Guidelines, a defendant convicted of a federal drug crime is eligible for a two-level enhancement if he maintained a premises for the purpose of manufacturing or distributing a controlled substance. U.S.S.G. § 2D1.1(b)(12). The enhancement applies to anyone who "(1) knowingly (2) opens or maintains any place (3) for the purpose of manufacturing or distributing a controlled substance." United States v. Johnson, 737 F.3d 444, 447 (6th Cir.2013). As noted by the Probation Officer in the Presentence Report, the Commentary to this provision of the Guidelines directs Courts to consider "(A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises." U.S.S.G. § 2D1.1(b), Application Note 17. However, the Commentary goes on to explain that "[m]anufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises." Id.

In United States v. Bell, the Sixth Circuit explored the proper application of this enhancement. See United States v. Bell, 766 F.3d 634 (6th Cir. 2014). The Court reviewed the portion of Application Note 17 regarding the principal or primary uses of the premises, and explained that Courts should "assess the primary or principal use of the home, or some part of it, by comparing the frequency of lawful to unlawful use." Id at 637. "At bottom, the question is whether [the defendant]'s home 'played a significant part' in distributing drugs." Id. Importantly, the Court determined, is that one can maintain a premises for more than one purpose – just because someone lives in a home does not mean it is immune from falling within the Guidelines enhancement. Id. See also, United States v. Broadnax, 777 Fed.Appx. 137, 142

11

(6th Cir. 2019) ("this enhancement applies if a defendant maintains a house for the purposes of both living in it and using it for drug trafficking.").

In Bell, the Court found that Bell's house in fact played a significant part in his drug distributing activities. Bell did not have a job, other than distributing drugs. He cooked cocaine into crack cocaine in the kitchen of his house, and other "tools of the trade," such as a digital scale, drug-packaging materials, and police scanners were located elsewhere in the house. Bell, 766 F.3d at 637. Likewise, Bell had a gun in his vehicle, and the Court found that he used his vehicle to distribute the drugs. Id. While the Court noted that drug storage on the property and observed transaction of the property will often suffice to trigger the enhancement under § 2D1.1(b)(12), "so too will a litany of circumstantial evidence showing drug production on the premises." Bell, 766 F.3d at 638.

In the instant case, police executed a search warrant at TUCKER's residence. They located a lease agreement listing him as a lawful tenant. Within the residence, police located everything necessary to store, package, and manufacture controlled substances for sale. To be sure, police found nearly an ounce of powder cocaine in very close proximity to digital scales with cocaine residue, multiple glass Pyrex containers and measuring cups with cocaine residue, silverware with cocaine residue, Sleepinal packets, and sandwich bags. These are the tools of crack cocaine manufacture, all located in the kitchen of TUCKER's residence. Likewise, police located an additional 10 grams of heroin and fentanyl within the house, and a gun that TUCKER later admitted was for his protection.

Prior to the execution of the search warrant, police recovered additional evidence of drug manufacture from the garbage that TUCKER put out for collection. Sleepinal capsules, cocaine residue, paper towels – all evidence of the manufacture of crack cocaine within the residence.

Further, TUCKER was the subject of three traffic stops during this investigation, two of which resulted in the seizure of narcotics packaged for sale, and the third in a "hot spot" for drug sales. The evidence is clear that TUCKER is a drug trafficker, and that his residence at 1675 Catalpa Road was the center of his operations. As noted by the Sixth Circuit in Bell, the guideline does not "carve out residences as a safe havens for being drug-production premises." Bell 766 F.3d at 638. TUCKER's residence is no exception, and the Government submits that the two-level enhancement under U.S.S.G. § 2D1.1(b)(12) properly applies.

## IV.   CONCLUSION

Based on the circumstances of the case at hand, TUCKER's criminal history, and his complete lack of regard for the criminal justice system, the Government respectfully requests this Court sentence TUCKER within the advisory guideline range reflecting the application of U.S.S.G. § 2D1.1(b)(12).

        Respectfully submitted,

        JUSTIN E. HERDMAN
        United States Attorney

By:   /s/ Robert J. Kolansky
      Robert J. Kolansky (PA: 316899)
      Assistant United States Attorney
      United States Court House
      801 West Superior Avenue, Suite 400
      Cleveland, OH 44113
      (216) 622-3780
      (216) 522-8355 (facsimile)
      Robert.Kolansky@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of December 2019, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

    /s/ Robert J. Kolansky
    Robert J. Kolansky
    Assistant U.S. Attorney